### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-14085-CIV-ROSENBERG/MAYNARD

**TOWNHOUSE RESTAURANT OF OVIEDO, INC. AND
ESTERO BAY HOTEL CO.,**

**Plaintiffs,**

**v.**

**NuCO2, LLC,**

**Defendant.**

_____/

### <u>ORDER ON PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS (DE 85)</u>

**THIS CAUSE** comes before this Court upon the above Motion. Following a hearing held on May 4, 2020, the undersigned directed the parties orally, and in the Order Memorializing Hearing, to select approximately 300 exemplar emails, plus attachments, from Defendant's privilege logs for *in camera* review.  DE 91.  On May 15, 2020, Defendant provided exemplar emails and accompanying attachments selected by both parties.  This Court has considered the emails and attachments.[1]  Having reviewed the materials submitted for *in camera* inspection, as well as the Motion, Response, and relevant case law, the undersigned resolves Plaintiffs' Motion as follows.

### <u>BACKGROUND</u>

Plaintiffs Townhouse Restaurant of Oviedo, Inc. and Estero Bay Hotel Co.  (collectively "Plaintiffs") filed a class action complaint against Defendant NuCO2, a beverage carbonation

---

[1] The Defendant submitted a representative sample of 353 emails to the Court.  The majority of these included attached documents, for a total of approximately 992 items for the Court's review.  On June 3, 2020, the Defendant provided the Court with five additional documents—with attachments—that were inadvertently omitted from the first sample.

company wholly owned by Praxair, Inc., the largest industrial and medical gases company in North America.  The Defendant sells carbon dioxide and related equipment at a fixed price through use of a form contract.  The form contract allows the Defendant to charge its customers (who are located nationwide) fuel and energy surcharges and implement "open escalation" price increases to pass-through certain costs the Defendant incurs in providing its goods and services.  The Plaintiffs claim the Defendant engaged in deceptive and unfair conduct in connection with these surcharges and price increases.  Specifically, the Plaintiffs allege that the additional costs charged to the Defendant's customers are actually a "hidden profit device" and have no relation to any increased costs purportedly incurred by the Defendant.

Since this litigation began, the Defendant has produced approximately five different privilege logs asserting privilege over thousands of emails and attachments.  On April 16, 2020, the Plaintiffs filed a Motion to Compel arguing that the privilege logs were deficient in several respects.  That motion is now ripe for review.

## DISCUSSION

### I.   The Parties' Dispute

Defendant argues that most of the disputed documents are wholly irrelevant to the case and therefore not discoverable under Rule 26 of the Federal Rules of Civil Procedure. The remaining documents are protected, Defendant contends, by the attorney-client privilege, the accountant-client privilege, and the confidentiality typically afforded to settlement negotiations.  Plaintiffs respond that all the documents at issue are presumably relevant because they were identified through keyword searches using terms agreed upon by both the parties.  Further, Plaintiffs say Defendant has not met the elements of the accountant-client privilege for documents withheld on that basis and that courts have not recognized a privilege regarding "settlement negotiations."

Lastly, Plaintiffs argue that attorney-client privilege does not protect emails that contain "mere facts and customer files" or communications that do not involve attorneys or legal staff. The undersigned will address each argument in turn.

## II. The Burden of Proof

"The discovery respondent bears the burden of establishing a lack of relevancy or some other basis for resisting production." *Safeco Ins. Co. of Am. v. Weissman*, 2018 WL 7046634, at *2 (S.D. Fla. Sept. 5, 2018). The party asserting a privilege has the burden of proving the applicability of that privilege. *Commercial Long Trading Corp. v. Scottsdale Ins. Co.*, 2012 WL 6850675, at *2 (S.D. Fla. Dec. 26, 2012); *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 638 (S.D. Fla. 2011). This burden is not met by conclusory claims that a privilege applies. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 584 (S.D. Fla. 2013). Rather, courts require that a party asserting privilege provide "specific detail as to the content of documents and their authors and recipients . . . in order to permit meaningful judicial review of the asserted privilege." *Id*. In other words, "[t]he [c]ourt should not have to guess or speculate about the applicability of the privilege, for the party asserting it has the affirmative duty to demonstrate that it applies to each document or communication sought to be disclosed." *Wyndham Vacation Ownership, Inc. et al. v. Reed Hein & Associates, LLC, et al.*, 2019 WL 9091666, at *7 (M.D. Fla. Dec. 9, 2019) (quoting *Purdee v. Pilot Travel Centers, LLC*, 2008 WL 11350099, at *1 (S.D. Ga. Feb. 21, 2008) (internal quotations omitted).

To have this burden of proof means that the party asserting a privilege is aware that it must produce specific factual support and legal authority to establish that each element of the specific privilege applies to *each* communication that they claim is protected from disclosure. *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1293 (S.D. Fla. 2012) (emphasis

added). If the party does not provide enough information to establish this, then the claim of privilege fails. *MapleWood Partners, L.P.*, 295 F.R.D. at 584; *Bridgewater v. Carnival Corp.*, 286 F.R.D. at 639.

## III. Analysis

### A. Relevance

Defendant contends that most of the withheld documents are irrelevant and therefore not discoverable under Rule 26. Plaintiffs responds that these documents are presumably relevant since they contain the parties' agreed upon search terms. Under the Federal Rules, discovery is very broad. And it was intended to be this way: the adoption of the Federal Rules meant that discovery "no longer need be carried on in the dark." *Hickman v. Taylor*, 67 S.Ct. 385, (1946). Although recent amendments to Rule 26(b) have altered the language since *Hickman*, the governing principle behind discovery—that it is to be a broad, inclusive process designed to facilitate the open exchange of information—remains true to this day. 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 2007 (3d ed. 2020). The text of Rule 26 enables broad discovery stating that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). But broad as the rule may be, the Court retains the power to limit the extent of discovery if it finds the proposed discovery exceeds the scope allowed under Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii).

Relevancy is key to determining the proper scope of discovery. To be relevant, the information sought must be "germane, conceivably helpful to the plaintiff, or reasonably calculated to lead to admissible evidence." *Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 687 (S.D. Fla 2007). Although the disclosed information need not be admissible as

evidence, the information must relate to the claims and defenses raised, rather than the general subject matter. *Id.* While a party cannot prematurely limit discovery by decrying any request as a "fishing expedition," the information sought must still be relevant to the issue before the court. *See Hickman*, at 392; *Kahn v. United States*, 2015 WL 4112081, at *2 (S.D. Fla. July 8, 2015) (stating that discovery requests must be relevant to a party's claim).

The relevancy determination has taken on increased importance given the vast amounts of electronically stored information often involved in civil litigation today. A great deal of communication occurs by email, for example, which has fundamentally altered the discovery process. The sheer volume of emails, attachments, digital files, and electronic data can become a major source of hardship during the discovery process. *See* The Sedona Conference, *The Sedona Conference Best Practices Commentary on The Use of Search & Information Retrieval Methods in E-Discovery*, 15 Sedona Conf. J. 217, 228–29 (2017) (discussing the proliferation of e-storage and the challenges such practices pose to litigants). Fortunately, technology offers a remedy in the form of keyword searches that may be used to locate responsive documents and limit excessive discovery. *Id.* Although keyword searches help eliminate problems, they can create issues of their own as well. One problem with keyword searches is their potential to be over or underinclusive. The degree to which the search terms either exclude or include relevant documents can have an immense effect on the number of documents produced. *See L-3 Commc'ns Corp. v. Sparton Corp.*, 313 F.R.D 661, 666 (M.D. Fla. 2015) (discussing challenges presented by the search term process and the factors that create accurate search terms).

Having conducted an *in camera* review, this Court agrees with Defendant that the vast majority of the disputed documents are entirely irrelevant to this case. If in fact they emerged from the use of agreed upon search terms, perhaps those terms needed to be further narrowed or

only applied to information held by certain custodians or divisions within NuCO2.  As it stands, most of the documents submitted relate to issues regarding state or local regulatory requirements, safety standards and permitting processes, mergers and acquisitions of NuCO2 or its clients, and other prospective business opportunities. These subject matters are not germane to the case, helpful to the Plaintiffs or reasonably likely to lead to admissible evidence.  Because these documents are irrelevant, Defendant is not required to produce them.  Thus, Plaintiffs' Motion to Compel the documents listed in Attachment A is denied on relevancy grounds.

### B. Accountant-Client Privilege

The next category of documents involves three emails and accompanying attachments that NuCO2 claims are protected by the accountant-client privilege.  Under Florida law, confidential communications between an accountant and client are protected when the communications involved were made for the purpose of accounting services:

> A client has the privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications with an accountant when such other person learned of the communications because they were made in the rendition of accounting services to the client.  This privilege includes other confidential information obtained by the accountant from the client for the purpose of rendering accounting advice.

Fla. Stat. § 90.5055.  "A communication between an accountant and the accountant's client is confidential if it is not intended to be disclosed to third persons other than: (1) those to whom disclosure is in furtherance of the rendition of accounting services to the client; and (2) those reasonably necessary for the transmission of the communication." *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 9988745, at *9 (S.D. Fla. June 9, 2017) (citing Fla. Stat. § 90.5055(1)(c)).

This Court need not extensively discuss the accountant-client privilege because it does not apply to any of the documents submitted for this Court's review.   Defendant submitted three

documents that it claims are confidential accountant-client advice: NuCO2_Priv_932, NuCO2_Priv_934, and NuCO2_Priv_968. The first two documents relate to technical issues NuCO2 experienced with its automatic billing technology. There is no advice from an accountant involved. The third document includes some accounting advice, but NuCO2 is sharing that advice with a customer so it clearly was not meant to be confidential and kept from disclosure to third parties. Thus, these emails and their accompanying attachments are not protected by the accountant-client privilege. NuCO2_Priv_932, NuCO2_Priv_934, and NuCO2_Priv_968 are included in Attachment A, however, because they are not relevant to the pending litigation. As a result, the Plaintiffs' Motion to Compel NuCO2_Priv_932, NuCO2_Priv_934, and NuCO2_Priv_968 is denied on relevancy grounds.

Since none of the documents NuCO2 claimed were protected by the accountant-client privilege actually warrant such protection, the Court is concerned that other documents are being improperly withheld on this basis. Consequently, the Defendant is instructed to re-review any document withheld based on the accountant-client privilege to ensure that it meets all of the legal requirements. Any document previously withheld under the accountant-client privilege that is relevant and does not meet the requirements of this privilege must be turned over to the Plaintiffs within ten (10) days of this Order.

### C. Settlement Negotiations

NuCO2 withholds several documents on the basis that they reveal confidential "settlement negotiations." In support, NuCO2 relies on *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003), in which the Sixth Circuit held that communications made in furtherance of settlement negotiations are privileged and protected from discovery by litigants in another action. *Id*. *Goodyear* is not binding on this Court, however. Indeed, courts in this

circuit have rejected the argument that settlement agreements have special protection from discovery. *See Kadiyala v. Pupke,* 2019 WL 3752654 (S.D. Fla. Aug. 8, 2019) (Matthewman, J.) (reviewing cases and finding no privilege protecting settlement agreements from disclosure); *United States ex rel. Cleveland Constr., Inc. v. Stellar Grp., Inc.,* 2017 WL 11460973, at *1 (M.D. Ga. Oct. 23, 2017) (declining to "invent" a settlement agreements privilege); *Jeld-Wen, Inc. v. Nebula Glass Intern., Inc.,* 2007 WL 1526649, at *3 (S.D. Fla. May 22, 2007) (Torres, J.) (noting that there is "nothing magical" about settlement agreements and no binding or persuasive authority in the Eleventh Circuit instructing otherwise).

The undersigned rejected the idea of a settlement agreement privilege in *Silver Streak Trailer Co., LLC v. Thor Indus., Inc.*, 2018 WL 8367073, at *7 (S.D. Fla. Nov. 15, 2018):

> Confidentiality and relevancy considerations are the typical barriers to permitting discovery of settlement agreements. *Virtual Studios, Inc. v. Royalty Carpet Mills, Inc.*, 2013 WL 12090122, at *4 (N.D. Ga. Dec. 23, 2013). However, "[d]espite the salutary purposes of preserving confidentiality to encourage settlements, under appropriate circumstances courts have the authority to encroach upon such agreements." *Gutter v. E.I. DuPont de Nemours & Co.*, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001). Even Federal Rule of Evidence 408, which limits the admissibility of settlement negotiations, "does not create a settlement privilege for purposes of discovery or make settlement agreements and negotiations per se undiscoverable." *Kipperman v. Onex Corp.*, 2008 WL 1902227, at *9 (N.D. Ga. Apr. 25, 2008). The undersigned recognizes the interests third parties have in the confidentiality of settlement agreements, but litigants cannot shield settlement agreements from discovery solely based on confidentiality if the agreement is relevant to the action, or likely to lead to relevant evidence. *Gutter*, 2001 WL 36086590, at *1; *Channelmark Corp. v. Destination Prod. Int'l, Inc.*, 2000 WL 968818, at *2 (N.D. Ill, July 7, 2000).

In this circuit, the caselaw makes clear that the touchstone for whether settlement agreements must be disclosed is relevance. *Virtual Studios, Inc. v. Royalty Carpet Mills, Inc.*, 2013 WL 12090122, at *4 (N.D. Ga. Dec. 23, 2013); *Mohamed v. Columbia Palms W. Hosp.*

*P'ship*, 2006 WL 8435429, at *4 (S.D. Fla. Oct. 30, 2006); *Norton v. Bank of Am., N.A.*, 2006 WL 8432180, at *9-10 (S.D. Fla. Apr. 27, 2006).  Consequently, NuCO2 may not withhold settlement documents that are relevant to the litigation.  A list of relevant, non-privileged documents previously withheld as settlement negotiations is found at Attachment B.  Plaintiffs' Motion to Compel the documents listed in Attachment B is granted.  These documents must be turned over to the Plaintiffs within ten (10) days of this Order.  The interest in confidentiality as to these documents may be adequately addressed by the stipulated protective order at docket entry 38.

NuCO2 is not required to turn over settlement documents that are irrelevant or otherwise privileged.  Settlement documents that are irrelevant are listed in Attachment A and Plaintiffs' Motion to Compel them is denied.  Plaintiffs' Motion to Compel is also denied as to settlement documents that are relevant but protected by the attorney-client privilege.  Attorney-client privilege documents are discussed below.

**D.  Attorney-Client Privilege**

In federal court, federal common law typically governs the application of attorney-client privilege.  Fed.R. Evid. 501.  When a federal court is sitting in diversity jurisdiction, however, state law governs.  *Id.*; *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 1321522, at *4 (N.D. Fla. Mar. 20, 2020); *Bivins v. Rogers*, 207 F. Supp. 3d 1321, 1324 (S.D. Fla. 2016).  The parties are before this Court by virtue of its diversity jurisdiction under 28 U.S.C. § 1332(d).  Because Florida law provides the rule of decision, Florida law determines the applicability of attorney-client privilege. *See Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d. 1222, 1233 (S.D. Fla. 2018) ("State law governs the application of the attorney-client privilege in a federal diversity action.").

Under Florida law, "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in rendition of legal series to the client." Fla. Stat. § 90.502(2) (2019). Stated more succinctly by the Florida Supreme Court, attorney-client privilege applies to "confidential communications made in the rendition of legal services to the client." *Burrow*, 334 F. Supp. 3d at 1233 (citation omitted). "A communication between lawyer and client is confidential if it's not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client[,] [and] (2) those reasonably necessary for the transmission of the communication." Fla Stat. § 90.502(1)(c).

The application of attorney-client privilege requires the weighing of conflicting policy considerations. On the one hand, the underlying purpose of the attorney-client privilege is to encourage clients to communicate openly with their attorneys. *In re Abilify (Aripiprazole) Product Liability Litigation*, 2017 WL 6757558, *2 (N.D. Fla. Dec. 29, 2017). On the other hand, attorney-client privilege obstructs the truth-seeking process and contravenes the fundamental principle that the public has the right to view the evidence. *See MapleWood Partners, L.P.*, 295 F.R.D. at 583 (discussing the competing policy concerns raised by attorney-client privilege). This tension— between encouraging transparency between counselor and client and promoting the truth-seeking inquiry of the adversarial process—is heightened when the client asserting the privilege is a corporation.

When the client is a corporate entity, there is heightened risk that the attorney-client privilege will be used to hide information. *Burrow*, 334 F. Supp. 3d at 1223. Standard corporate email practices—undoubtedly guided by the fallacious notion that a paragraph or label claiming privilege makes it so—encourage the inclusion of in-house counsel in communications that do not

pertain to legal advice or srvices. This potential for abuse has led the Florida Supreme Court to provide further guidance for the application of attorney-client privilege in the corporate context: Corporate clients' claims of attorney-client privilege are subject to heightened scrutiny. *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So.2d 1377, 1383 (Fla. 1994). When the party asserting the privilege is a corporation, it bears the burden of proving that "the communication would not have been made but for the contemplation of legal services; … the content of the communication relates to the legal services being rendered; and the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Preferred Care Partners Holding Corp. v. Humana*, 258 F.R.D. 684 (S.D. Fla. 2009) (quoting *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 699 (S.D. Fla. 2008)).

Plaintiffs complain that Defendant wrongfully asserts attorney-client privilege over emails that do not involve lawyers or legal staff. DE 85 at 5 (complaining that "[m]ore than 29% of the documents NuCO2 withheld do not contain an attorney or attorney-staff on them"). Plaintiffs insist that if attorneys do not participate in an email communication, that email cannot be protected by the attorney-client privilege. Plaintiffs' position is incorrect. It is not necessary for an attorney or legal staff to be a party to a communication to make it privileged. While the lack of any attorney involvement may be a factor tending to weigh against a finding of privilege, "[t]he ultimate touchstone for application of the privilege … is whether the communication revealed advice from, or a request for advice made to, an attorney in some fashion." *United States v. Davita, Inc.*, 301 F.R.D. 676, 682 (M.D. Ga. 2014). Just as the lack of an attorney on an email does not necessarily render that email discoverable, an attorney's participation on the email chain does not necessarily establish privilege either. *See Burrow*, 334 F. Supp. 3d. at 1236 (stating that a communication is not privileged by virtue of an attorney's presence). "Defendants must show, irrespective of

whether one or [any] lawyer[] sent or received the communication, that the communication was confidential and that the primary purpose of the communication was to relay, request, or transmit legal advice." *Id*.  The identity of the sender or recipient is not the important consideration, what is important is the subject matter of the communication and whether it reveals legal services or advice.  If two business employees exchanged emails concerning the collection of documents for the purpose of requesting legal advice, such a communication would be privileged despite no lawyers being involved.  Conversely, if in-house counsel sent a business employee an email containing his or her feedback on the effectiveness of a recent marketing strategy, that email would not magically become privileged because it was sent by in-house counsel.  *In re Denture Cream Products Liability Litigation*, 2012 WL 5057844, *10 (S.D. Fla. Oct. 18, 2012).  Regardless of whether a communications' participants include lawyers, the party asserting attorney-client privilege carries the burden of showing that the primary purpose of the communication in question was to obtain legal advice. *Preferred Care Partners*, 258 F.R.D. at 689.

Most of the emails NuCO2 refuses to disclose are in fact protected by the attorney-client privilege.  The privileged emails largely involve in-house counsel providing legal advice to NuCO2 managers or responding to legal inquiries or concerns.  Some of the emails are between NuCO2 managers and employees, and do not involve lawyers or legal staff.  Yet, that is not fatal to Defendant's privilege claim.  Emails in which employees transmit legal advice received from counsel between themselves or request information from one another in order to seek legal advice remain privileged despite no lawyer being on the email thread.  Attachment C lists all documents reviewed *in camera* that are protected by the attorney-client privilege.  Plaintiffs' Motion to Compel the documents in Attachment C is denied on privilege grounds.

Some of the emails on NuCO2's privilege logs do not meet the elements of the attorney-client privilege, however.  Attachment D sets forth the emails and attachments that are not protected by the attorney-client privilege and which must be turned over in this case.  Plaintiffs' Motion to Compel the documents in Attachment D is granted.

As a final point, this Court notes that many of the emails that NuCO2 claims are privileged were transmitted with multiple documents attached.  Plaintiffs complain that the attached documents are "mere facts and customer files" that do not become privileged just by being attached to a privileged email communication.   This Court agrees with Plaintiffs' position, generally speaking.   *See In re Abilify*, 2017 WL 6757558 at *7 ("Simply because factual information has been transmitted to an attorney does not make the underlying factual information privileged.").  At the same time, factual information that has been gathered and transmitted by corporate employees to an attorney for the purpose of receiving legal advice may be privileged, even if such information, by itself, would not otherwise be protected from disclosure.  *Id*.

In *Upjohn Co. v. United States,* 101 S.Ct. 677 (1981), the Supreme Court set out the basic relationship between privileged attorney-client communications and factual information accompanying those communications: "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  *Id*. at 685.  This principle was reiterated by the Florida Supreme Court in *Deason,* 632 So.2d at 1387.  But *Deason* clarified that even factual information can be withheld when its disclosure would reveal the substance of legal advice.  *Id*.  In *Deason*, counsel sought to depose corporate managers of Southern Bell to find out about disciplinary actions taken against certain employees.  The managers had no firsthand knowledge of these issues; their only knowledge was based on their review of information obtained from their lawyers.  The *Deason C*ourt explained:

The instant case presents the difficulty of deciphering the communication from the underlying facts. Public Counsel claims that it did not ask the deponents what the company attorneys told them; rather, Public Counsel only asked why the employees were disciplined or what actions of the employees resulted in discipline. Differentiating between these questions is merely a game of semantics. The privileged information which counsel gave to the managers describes the actions of the employees. To answer Public Counsel's questions regarding the specific reasons the employees were or were not disciplined would necessarily require the deponents to reveal the contents of the privileged communication. Public Counsel cannot obtain indirectly through depositions that information which the law does not permit it to obtain directly through disclosure of the written privileged communication. Therefore, Public Counsel and the PSC are restricted from questioning the deponents in a manner that would require them to reveal the content of the communication.

*Id.* at 1387.

In considering whether documents attached to privileged communications are protected, the Court must first consider whether the content of the attachment is a communication or a fact. *See Upjohn*, 449 U.S. at 395-96 (the privilege applies only to communications and does not extend to facts). If the attachment contains a communication, the Court must consider whether it evidences a request for legal assistance or the transmission of legal advice. *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Cent.*, 2012 WL 5415108, *3 (M.D. Fla Nov. 6, 2012). If the attachment contains facts and not communications, the Court must evaluate whether disclosure of the facts would somehow reveal a request for, or the content of, legal advice. *See Deason*, 632 So.2d at 1387. As *Deason* explained, Plaintiffs cannot obtain indirectly (through documents attached to privileged emails) that which they could not obtain directly from the privileged communications themselves. *Compare Consumer Financial Protection Bureau v. Ocwen Financial Corp.*, 2019 WL 1119788, *3 (S.D. Fla. Mar. 12, 2019) (declining to compel disclosure of factual information curated and re-formatted by attorneys for the purpose of providing legal

advice), *with U.S. ex rel. Baklid-Kunz*, 2012 WL 5415108 at \*7 (compelling disclosure of factual information that did not reflect legal advice or information transmitted to counsel for the purpose of obtaining legal advice).

With these legal principles in mind, the undersigned reviewed each email and attachment separately to determine whether the attorney-client privilege applies.  For purposes of this review, the undersigned refers to the cover email as the "parent" email, each attachment as a "child" document, and the email plus attachments as an email "family."  Where one or some child documents need be treated differently from the parent email in a single email family, Attachment E explains the undersigned's ruling.  Plaintiffs' Motion to Compel the documents in Attachment E is granted in part and denied in part based on the undersigned's specific instructions.  Where Attachment E indicates that a document, or a portion thereof, must be turned over, Defendant must do so within ten (10) days of this Order.

### E.  Sanctions

Plaintiffs also move to sanction Defendant should the Court grant any part of their Motion. Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure provides that where a motion to compel is granted, the court must require the party or attorney whose conduct necessitated the motion, or both, "to pay the movant's reasonable expenses incurred in bringing the motion, including attorney's fees." Rule 37(a)(5)(A).  The Rule goes on to state, however, that payment shall not be ordered if the opposing party's nondisclosure was substantially justified.   Fed.R.Civ.P. 37(a)(5)(A)(ii).   This Court has conducted a thorough review of the documents submitted and determined that the vast majority were properly withheld from disclosure. Therefore, NuCO2's position was substantially justified and the Plaintiffs' request for sanctions is denied.

## **CONCLUSION**

Accordingly, for the reasons set forth above, it is therefore,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Compel as it relates to documents in Attachment A is **DENIED**.  It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Compel as it relates to documents in Attachment B is **GRANTED**.  The Defendant shall produce both the exemplar documents in Attachment B and all comparable documents within ten (10) days of this Order.  It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Compel as it relates to documents in Attachment C is **DENIED**.  It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Compel as it relates to documents in Attachment D is **GRANTED**.  The Defendant shall produce both the exemplar documents in Attachment D and all comparable documents within ten (10) days of this Order.  It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion to Compel as it relates to documents in Attachment E is **GRANTED in part.** The Defendant shall produce the exemplar documents <u>as instructed</u> in Attachment E and all comparable documents within ten (10) of this Order.  Plaintiffs' Motion to Compel the remaining documents in Attachment E is otherwise **DENIED**. It is further,

**ORDERED AND ADJUDGED** that the Defendant shall re-review all documents withheld on the basis of accountant-client privilege to ensure that they meet the requirements of the accountant-client privilege.  Specifically, any document withheld on the basis of accountant-client privilege must contain confidential communications made by an accountant in rendering

accounting services to NuCO2, or confidential information obtained by the accountant from NuCO2 for the purpose of rendering accounting advice.  The Defendant shall produce any documents that are relevant and not protected by the accountant-client privilege within ten (10) days of this Order.  It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' request for an award of fees and costs incurred in bringing their Motion is **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 24th day of June, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**
**NOT RELEVANT/ DO NOT PRODUCE**

| BATES NUMBER | DESCRIPTION |
|---|---|
| *NuCO2_Priv_0230* | *Communication between members of the legal department and business employees. The purpose of the communications is to discuss the status of company assets that could be exposed during a customer's bankruptcy proceedings.[1]* |
| *NuCO2_Priv_246* | *Senior Counsel sent business employee form contracts used by NuCO2 for sourcing materials as a customer.* |
| *NuCO2_Priv_392* | *Email chain between NuCO2 employees and in-house counsel in reference to allegations of property damage.* |
| *NuCO2_Priv_836* | *Email chain between business employees and in-house counsel. The subject matter was dispute resolution between NuCO2 and a customer.* |
| *NuCO2_Priv_929* | *Email chain involving in-house counsel and business employees. The subject matter is litigation.* |
| NuC02_Priv_0986 | Email chain between business employees requesting approval for customer service agreement. |
| *NuCO2_Priv_1040* | *In-house counsel providing notice of proposed settlement agreement for dispute in NuCO2_Priv_836.* |
| NuCO2_Priv_1098 | Email chain between in-house legal staff and business employees discussing the similarities between NuCO2 form agreements and the competitor's new agreement. |
| *NuCO2_Priv_1126X* | *Business employee sent in-house counsel a form he requested concerning the dispute in NuCO2_Priv_1040.* |
| *NuCO2_Priv_1134* | *Email chain between in-house counsel and business employees relating to potential litigation.* |
| *NuCO2_Priv_1190* | *In-house counsel informing business employee of correspondence received from a customer's attorney.* |
| *NuCO2_Priv_1235* | *Business employee requested legal advice relating to NuCO2's obligations as a purchaser of equipment.* |
| NuCO2_103801 | Company materials detailing a CO2 delivery system. |
| NuCO2_153419 | Email chain with several business employees discussing a potential safety issue from a customer's tanks. |
| *NuCO2_157993* | *Email thread involving senior business employees and in-house counsel regarding a contract issue.* |
| NuC02_165133 | Business employee informing another business employee of a message from outside counsel. |
| *NuCO2_170882* | *Redacted section involves a dispute over a contract provision and the governing law of the customer's state.* |
| NuCO2_170951 | Business employees discussed a customer's tank and a potential safety issue that was alleged. |

---

[1] Italics are used in Attachment A to identify documents that may be protected by the attorney-client privilege in addition to being irrelevant.

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_171636** | Business employees exchanged emails regarding insurance coverage for a service agreement. |
| **NuCO2_171940** | Business employees communicated among each other regarding a competitor's allegations of a safety violation created by NuCO2. |
| ***NuCO2_172518*** | *In-house counsel emailed business employee to discuss a NuCO2 agreement.* |
| **NuC02_172993** | Teleconference meeting request for a bid proposal. |
| **NuC02_178834** | Internal business documents outlining a CO2 monitoring system. |
| ***NuC02_Priv_ 18*** | *Additional emails from in-house counsel and business employees discussing the dispute in NuCO2_170882.* |
| ***NuC02_Priv_56*** | *Email thread between in-house counsel and business employees regarding a contested issue with a customer.* |
| ***NuC02_Priv_119*** | *Additional emails from the tax dispute in NuCO2_Priv_56.* |
| ***NuC02_Priv_127*** | *Additional emails from NuCO2_Priv_56 and NuCO2_Priv_119.* |
| ***NuC02_Priv_608*** | *Legal staff requested a document retention hold.* |
| **NuC02_Priv_873** | Legal assistant emailed business employee regarding document retention due to possible FTC oversight due to merger. |
| ***NuC02_Priv_1042*** | *Additional emails relating to NuCO2_Priv_1040 and NuCO2_Priv_836.* |
| ***NuCO2_Priv_938*** | *Business employees and in-house counsel discussed legal issues involving a former customer.* |
| **NuCO2_Priv_16** | Communications and documents concerning the business and financial information of a company NuCO2 seems unlikely to acquire. |
| **NuCO2_Priv_108** | Template form agreements concerning a NuCO2 affiliated company. |
| **NuCO2_Priv_121** | Communications and documents concerning a NuCO2 affiliated company and a third party. |
| **NuCO2_Priv_639** | Documents outlining things to consider before acquiring new companies and integrating them. |
| **NuCO2_Priv_723** | Evaluation of a company NuCO2 plans to acquire. |
| **NuCO2_Priv_729** | Evaluation of a company NuCO2 plans to acquire. |
| **NuCO2_Priv_810** | Evaluation of a business opportunity. |
| **NuCO2_Priv_838** | Communications regarding California Carbon Auction results. |
| **NuCO2_Priv_847** | Communication regarding a new offer for acquisition. |
| **NuCO2_Priv_856** | Acquisition summary and model for a company. |
| **NuCO2_Priv_857** | Acquisition summary and model for a company. |
| **NuCO2_Priv_858** | Presentation on an acquisition summary. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| NuCO2_Priv_868 | Transmission of the financial analysis of the Miami branch of a company. |
| NuCO2_Priv_870 | Documents relating to an acquisition project. |
| NuCO2_Priv_876 | Documents relating to integration planning, largely the same as NuCO2_Priv_639. |
| NuCO2_Priv_963 | Report of the intangible valuation of a company. |
| NuCO2_Priv_1068 | Email transmitting the purchase price valuation of a company. |
| NuCO2_Priv_1125 | Praxair's acquisition model of a company. |
| NuCO2_Priv_1129 | Further communications about Praxair's acquisition model in NuCO2_Priv_1125. |
| NuCO2_Priv_1202 | Emails sharing sales details, assets lists, and documents relating to a company. |
| NuCO2_ Priv_837 | Emailing sharing article on the California Carbon Auction results. |
| NuCO2_ Priv_1065 | Communications regarding sales information and the customer transition of newly acquired company. |
| NuCO2_ Priv_1066 | Communications regarding sales information and the customer transition of newly acquired company. |
| NuCO2_Priv_322 | Communications about updating NuCO2's customer account to reflect the customer's acquisition of other stores. |
| NuCO2_Priv_323 | Communications about updating NuCO2's customer account to reflect the customer's acquisition of other stores. |
| NuCO2_Priv_341 | Communications about updating NuCO2's customer account to reflect the customer's acquisition of other stores. |
| NuCO2_Priv_1069 | Communications about updating NuCO2's customer account to reflect the customer's acquisition of other stores. |
| NuCO2_Priv_1204 | Documents related to the acquisition of a company. |
| NuCO2_170723 | Contract data reports of a customer. |
| NuCO2_ Priv_1240 | Internal email request and response regarding processing two "new owner locations". |
| NuCO2_Priv_854 | Emails sharing proposed communications regarding the Praxair/Linde merger. |
| NuCO2_Priv_855 | Emails sharing proposed communications regarding the Praxair/Linde merger. |
| NuCO2_Priv_864 | Communications regarding the Praxair/Linde merger. |
| NuCO2_Priv_865 | Communications regarding the Praxair/Linde merger. |
| NuCO2_Priv_0753 | *Emails compiling topics to discuss with legal counsel.* |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_1247** | Internal emails concerning administrative issues. |
| **NUCO2_Priv_4** | Emails between NuCO2 and chain customer about cancelling service and whether multi-location agreement exists. |
| **NuCO2_Priv_4.1** | Standard form contract and store listings. |
| **NuCO2_Priv_4.2** | Certified letter from customer's counsel pertaining to dispute over unrelated issue. |
| **NuCO2_Priv_4.4** | Letter from customer counsel pertaining to dispute over unrelated issue. |
| **NuCO2_Priv_39.1** | Letter from competitor with offer for customer. |
| **NuCO2_Priv_44** | *Internal emails pertaining to the company's ability to respond to a subpoena.* |
| **NuCO2_Priv_65** | *Employees conveying advice of legal counsel and requesting action in compliance with the advice of counsel.* |
| **NuCO2_Priv_65.2** | *Includes attorney and for the primary purpose of conveying and receiving legal counsel.* |
| **NuCO2_Priv_65.3** | Letter from customer's attorney about equipment service issues. |
| **NuCO2_Priv_95** | *Internal emails pertaining to a letter received from an attorney for a client, seeking legal advice.* |
| **NuCO2_Priv_95.1** | Records of interactions with customer on unrelated issue. |
| **NuCO2_Priv_95.2** | Standard product supply agreement. |
| **NuCO2_Priv_100** | Email about whether customer signed agreement. |
| **NuCO2_Priv_100.1** | Standard product supply agreement. |
| **NuCO2_Priv_100.2** | Standard product supply agreement. |
| **NuCO2_Priv_100.3** | Additional location agreement. |
| **NuCO2_Priv_122.1** | Email with customer about rental of bulk and generator and signing agreement. |
| **NuCO2_Priv_133** | Emails about customer cancellation over customer service issues. |
| **NuCO2_Priv_133.1** | Records of interactions with customer over customer service issues and resulting cancellation. |
| **NuCO2_Priv_138** | Email forwarding letter from customer attorney on unrelated issues. |
| **NuCO2_Priv_155** | Email header without substantive relevance. |
| **NuCO2_Priv_155.1** | List of customers with outstanding debt. |
| **NuCO2_Priv_174** | Emails discussing whether attachments/addendums to agreement exist. |
| **NuCO2_Priv_176.1** | Customer data sheet without clear relevance. |
| **NuCO2_Priv_177.2** | Standard product supply agreement. |
| **NuCO2_Priv_182.1** | Plan cost information. |
| **NuCO2_Priv_182.3** | Customer information without substantive relevance to the current issues. |
| **NuCO2_Priv_182.4** | Internal emails between NuCO2 non-legal employees preparing for earlier meeting with customer. |
| **NuCO2_Priv_186.1** | *Email chain including in-house counsel and pertaining to drafting cease and desist letter.* |

4

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_186.2** | *Email chain seeking legal counsel pertaining to rights under contract.* |
| **NuCO2_Priv_186.3** | Email chain between NuCO2 employees discussing customer's dispute of renewal of contract and whether negotiations were misrepresented. |
| **NuCO2_Priv_186.4** | Giant image of email footer graphic. |
| **NuCO2_Priv_186.5** | Email between NuCO2 employee and customer asking about tank displacement and indicating company's stance on contract renewal. |
| **NuCO2_Priv_186.6** | Copy of renewal provision of contract. |
| **NuCO2_Priv_186.7** | Email from customer detailing his company's position on contract dispute, then acknowledgement of the same by NuCO2 employee. |
| **NuCO2_Priv_186.8** | Giant image of email footer. |
| **NuCO2_Priv_186.9** | Email to customer with no body text other than "Thank you" |
| **NuCO2_Priv_186.11** | A blank page. |
| **NuCO2_Priv_186.12** | Blank franchisee agreement for restaurant group. |
| **NuCO2_Priv_186.13** | A blank page. |
| **NuCO2_Priv_186.14** | Standard form product supply agreement and addendum for termination for cause. |
| **NuCO2_Priv_186.15** | A blank page. |
| **NuCO2_Priv_194.2** | Customer invoice for overpayments. |
| **NuCO2_Priv_205.3** | Customer data without any relevant information. |
| **NuCO2_Priv_223** | Exchange about customer's overdue balances and whether invoices were going to the correct location. |
| **NuCO2_Priv_223.1** | Exchanges about customer's overdue balances. |
| **NuCO2_Priv_223.2** | Exchanges about customer's correct billing address. |
| **NuCO2_Priv_223.3** | Exchanges about credits to customer account. |
| **NuCO2_Priv_223.4** | Emails about new pricing agreement and credits to account. |
| **NuCO2_Priv_223.5** | Emails about customer's overdue bills and email pertaining to employee's professionalism. |
| **NuCO2_Priv_223.6** | Exchanges about customer's correct billing address. |
| **NuCO2_Priv_223.7** | Exchanges about application of credits to invoices. |
| **NuCO2_Priv_223.8** | Exchange about a restaurant being out of CO2 and threat to dissolve contract. |
| **NuCO2_Priv_223.9** | Data on customer's invoices and application of credit. |
| **NuCO2_Priv_223.10** | Data on customer's locations and open invoice amounts. |
| **NuCO2_Priv_223.12** | Email about shipping to a location. |
| **NuCO2_Priv_223.13** | Standard product supply agreement and store listing. |
| **NuCO2_Priv_224** | Notice of customer intending to dissolve contract because of issues with customer service and equipment. |
| **NuCO2_Priv_224.1** | Denver Fire Dept CO2 regulations and blank application |
| **NuCO2_Priv_224.2** | Colorado Springs CO2 regulations |
| **NuCO2_Priv_228** | Emails between restaurant company and NuCO2 pertaining to delinquent payments and avoiding breach of contract. |
| **NuCO2_Priv_228.1** | Confirmation of company's payment. |

| Bates Number | Description |
|---|---|
| **NuCO2_Priv_238** | Email header between non-legal counsel. Attachments say open invoices. |
| **NuCO2_Priv_238.1** | Email exchange between customer and NuCO2 non-legal staff pertaining to proper billing location and wanting invoice copies. |
| **NuCO2_Priv_238.2** | Sending of previous email thread to non-legal employee. |
| **NuCO2_Priv_238.3** | Forwarding of email chain to non-legal counsel pertaining to settling of unpaid debts. |
| **NuCO2_Priv_238.4** | Record of previous invoices and base credits. |
| **NuCO2_Priv_238.5** | Customer records of invoices and payment dates. |
| **NuCO2_Priv_242** | Emails pertaining to customer's desire to cancel contract over equipment/customer service issues. |
| **NuCO2_Priv_242.1** | Customer invoice dates list. No additional context. |
| **NuCO2_Priv_242.3** | Copy of executed contract and emails with sales staff for paperwork to process the contract. Also, customer location data. |
| **NuCO2_Priv_261** | Email requesting release of customer from contract over customer service issues. |
| **NuCO2_Priv_343** | Emails about waiving termination fee and tank removal. |
| **NuCO2_Priv_354** | *Employees discussing soliciting advice from legal counsel regarding potential litigation.* |
| **NuCO2_Priv_354.1** | NuCO2 collection department demand letter to customer for unpaid bills. |
| **NuCO2_Priv_396X** | Email chain between customer's attorney and NuCO2 staff, and then between NuCO2 staff, pertaining to billing errors and application of credit to the customer account. |
| **NuCO2_Priv_396.1** | Customer invoice/locations records without breakdown. |
| **NuCO2_Priv_431** | Email from non-legal employee about settling dispute with departing customer over unrelated issues. |
| **NuCO2_Priv_457** | *Employees soliciting in-house counsel to draft agreement in accordance with discussed terms.* |
| **NuCO2_Priv_457.2** | Standard product supply agreement. |
| **NuCO2_Priv_457.4** | Standard product supply agreement. |
| **NuCO2_Priv_474** | Email chain pertaining to question of validity of customer signature on agreement. |
| **NuCO2_Priv_474.1** | Contract of standard form contract. |
| **NuCO2_Priv_474.2** | Signed agreement as to additional location. |
| **NuCO2_Priv_474.4** | Customer location listing, standard agreement, and credit check form. |
| **NuCO2_Priv_474.5** | Emails pertaining to customer complaint over question of signature on contract and other unrelated issues. |
| **NuCO2_Priv_481** | *Employee communicating legal advice received with recommendations for changes to proposal.* |
| **NuCO2_Priv_481.1** | Letter from customer's counsel notifying of cancellation as a result of unrelated issues. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_481.2** | Contract data sheet, previous email from customer, and location listing. |
| **NuCO2_Priv_564** | Emails pertaining to customer's displeasure with running out of product and lack of resolution. |
| **NuCO2_Priv_564.1** | Customer service record without any relevant information. |
| **NuCO2_Priv_564.3** | Customer service and delivery records. |
| **NuCO2_Priv_564.4** | Records of application of goodwill credit to settle unrelated customer issue. |
| **NuCO2_Priv_577.1** | Blank bill of sale with marking out of one entry spot. |
| **NuCO2_Priv_599** | Email between two non-legal staff employees stating a document has been forwarded to customer's attorney. |
| **NuCO2_Priv_599.1** | Product supply agreement with blank spaces. |
| **NuCO2_Priv_602** | Employee forwarding email from customer's attorney, who was hoping to reach agreement to continue business relationship. |
| **NuCO2_Priv_602.1** | Letter from customer's attorney dealing with contract issues he says aren't substantive in business terms. |
| **NuCO2_Priv_602.2** | Standard product supply agreement. |
| **NuCO2_Priv_602.3** | Draft agreement created and annotated by customer's attorney. |
| **NuCO2_Priv_602.4** | Same draft agreement as previous but without annotations. |
| **NuCO2_Priv_603** | Email chain involving customer's counsel, Praxair in-house counsel, and other non-legal employees pertaining to cancellation of contract and payment of outstanding obligations. |
| **NuCO2_Priv_603.1** | Customer invoice amounts in spreadsheets without breakdowns. |
| **NuCO2_Priv_610** | Email chain between customer's attorney, Praxair's attorney, and employees about resolution and termination of contract. |
| **NuCO2_Priv_610.1** | Agreement for release from contract. |
| **NuCO2_Priv_621** | Email exchange between customer's attorney and non-legal employee of NuCO2 pertaining to settling contractual issue, largely one of formatting and whose fact-pattern is more accurate. |
| **NuCO2_Priv_621.1** | Contract with proposed revisions. |
| **NuCO2_Priv_893** | Email exchange between NuCO2 employee and apparent debt collection agency employee about customer records formatting. |
| **NuCO2_Priv_893.1** | More than 600 pages of customer data. |
| **NuCO2_Priv_937** | Email exchange between employees of NuCO2 and debt collection agency about whether checks were received and service restored. |
| **NuCO2_Priv_937.1** | Invoice for a customer. |
| **NuCO2_Priv_940** | Email header with unidentifiable attachment information. |
| **NuCO2_Priv_940.1** | Listing of account statuses for debt collection agency. |
| **NuCO2_Priv_943** | Emails between debt collector and NuCO2, in which debt collector asks for invoices for customer who has agreed to pay. |
| **NuCO2_Priv_944** | Emails between debt collector and NuCO2 employee clarifying due status and account status. |
| **NuCO2_Priv_949** | Email between debt collector and NuCO2 employee pertaining to invoices and equipment pickup. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_949.1** | Copy of executed agreement with franchisee. |
| **NuCO2_Priv_949.3** | Copies of invoices without relevant information. |
| **NuCO2_Priv_949.4** | Copies of invoices without relevant information. |
| **NuCO2_Priv_950** | Emails between NuCO2 employees and debt collector pertaining to customer's attorney disputing validity of contract. |
| **NuCO2_Priv_950.1** | Copy of old executed contract. |
| **NuCO2_Priv_951** | Emails between non-legal NuCO2 employees and collector, with collector asking if there were any problems for customer on NuCO2 end. |
| **NuCO2_Priv_951.2** | Copy of executed contract. |
| **NuCO2_Priv_958** | Emails between customer's attorney and non-legal employee at NuCO2 pertaining to cancellation and demand for payment. |
| **NuCO2_Priv_958.1** | Copy of executed contract. |
| **NuCO2_Priv_958.2** | Equipment lease/product purchase agreement. |
| **NuCO2_Priv_1057** | Emails between customers and NuCO2 employees discussing term changes. |
| **NuCO2_Priv_1057.1** | Internal emails discussing negotiations and whether terms are acceptable. |
| **NuCO2_Priv_1057.2** | Standard supply agreement. |
| **NuCO2_Priv_1084.1** | Automatic out-of-office email. |
| **NuCO2_Priv_1088** | Email chain predominantly between NuCO2 employees and customer/customer rep pertaining to settling billing disputes so as to resume service. |
| **NuCO2_Priv_1088.1** | Credit card payment confirmation. |
| **NuCO2_Priv_1102** | Approval for reversal of charge for customer. |
| **NuCO2_Priv_1104** | Email chain between legal and non-legal staff pertaining to possible outsourcing issue with client. |
| **NuCO2_Priv_1104.1** | Work order history for customer. |
| **NuCO2_Priv_1104.2** | Contract copies and internal emails about servicing a location. |
| **NuCO2_Priv_1133** | *Employees seek legal advice from legal staff pertaining to the company's position.* |
| **NuCO2_Priv_1133.1** | Sparse email forwarding an attachment of a contract. |
| **NuCO2_Priv_1133.2** | Email header for forwarding attachment. |
| **NuCO2_Priv_1133.3** | Copy of a standard form contract. |
| **NuCO2_Priv_1179** | *Email to in-house counsel clarifying contractual issue and legal stance.* |
| **NuCO2_Priv_1179.1** | Standard product supply agreement. |
| **NuCO2_Priv_1179.2** | A blank page. |
| **NuCO2_Priv_1179.3** | Standard additional location/equipment agreement. |
| **NuCO2_Priv_1179.4** | A blank page. |
| **NuCO2_Priv_1181.1** | Standard equipment/product supply agreement. |
| **NuCO2_Priv_1181.2** | List of customer locations. |
| **NuCO2_Priv_1188** | Email chain about servicing and billing for equipment and getting team on the same page on the issue. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_1188.1** | Emails clarifying billing situation for equipment and updating on situation with customer. |
| **NuCO2_Priv_1189.1** | Letter from customer's attorney demanding resolution to incorrect billing and property damage issue. |
| **NuCO2_Priv_1189.2** | A blank page. |
| **NuCO2_Priv_1189.3** | Letter from customer's attorney pertaining to incorrect billing and property damage issue. |
| **NuCO2_Priv_1189.4** | A blank page. |
| **NuCO2_Priv_1189.5** | Email forwarding email notice from customer's attorney. |
| **NuCO2_Priv_1193.1** | Letter from customer's attorney pertaining to incorrect billing and supply issues. |
| **NuCO2_Priv_1193.2** | Emails forwarding on customer lawyer's email. |
| **NuCO2_Priv_1198** | Emails between displeased small business customer and NuCO2 employees pertaining to poor customer service experience and billing issues. |
| **NuCO2_Priv_1198.1** | Unrelated customer invoice. |
| **NuCO2_Priv_1198.2** | Unrelated customer invoice. |
| **NuCO2_Priv_1198.3** | Unrelated customer invoice. |
| **NuCO2_Priv_1198.4** | Unrelated customer invoice. |
| **NuCO2_Priv_1198.5** | Unrelated customer invoice. |
| **NuCO2_Priv_1198.6** | Unrelated customer invoice. |
| **NuCO2_Priv_1215** | *Emails between NuCO2 employees requesting copies of contracts, relating to ongoing legal issue, advising to contact in-house counsel, and then doing so. Pertaining to unrelated issues.* |
| **NuCO2_Priv_1215.1** | Copy of standard form contract. |
| **NuCO2_Priv_1215.2** | Additional locations agreement. |
| **NuCO2_Priv_1215.3** | Standard product supply agreement. |
| **NuCO2_Priv_1215.4** | Standard product supply agreement. |
| **NuCO2_Priv_1215.5** | Standard product supply agreement. |
| **NuCO2_Priv_1215.6** | Additional agreement for location or equipment. |
| **NuCO2_Priv_1215.7** | Standard product supply agreement. |
| **NuCO2_Priv_1224** | Emails between displeased customer and NuCO2 staff pertaining to settling dispute over supply and unpaid bills. |
| **NuCO2_Priv_1224.1** | A giant "Thank You" on a page. |
| **NuCO2_Priv_1224.2** | A giant corporate logo. |
| **NuCO2_Priv_1227** | *Emails between non-legal staff include solicitation of in-house counsel for contractual issues.* |
| **NuCO2_Priv_1227.1** | Technical specifications/requirements for local brewery. |
| **NuCO2_Priv_1227.2** | Customer service records. |
| **NuCO2_Priv_1227.3** | Email chain about customer's technical requirements. |
| **NuCO2_Priv_1227.4** | Emails pertaining to issues of servicing and supply. |
| **NuCO2_Priv_1227.5** | Third-party material about technical requirements. |
| **NuCO2_126422** | Emails pertaining to technician's actions and proper protocol with equipment. |

| Bates Number | Description |
|---|---|
| **NuCO2_165620** | Emails between customer's rep and then between NuCO2 employees pertaining to ongoing effort secure deal, including contract language. |
| **NuCO2_167486** | *In-house counsel and non-legal employees are passing along and acquiring information primarily for the purpose of responding to a legal issue.* |
| **NuCO2_170705** | Email chain pertaining to customer's overage charges but primarily the NuCO2 team discussing how the charges are computed and why customer was billed that way. |
| **NuCO2_172014** | *Emails indicate and share legal advice/direction from in-house counsel pertaining to contractual issues.* |
| **NuCO2_172886** | Email chain including email from competitor and NuCO2's interactions with the same, damage to customer location, and NuCO2 employees sharing backstory with one another. |
| **NuCO2_Priv_19** | Emails between NUCO2 employees and debt collector pertaining to customer's unpaid bills and resolution of the same. |
| **NuCO2_Priv_0088** | Email chain between NuCO2 employees and customer, pertaining to incorrect calculations for customer's bill and resolution of the same. |
| **NuCO2_Priv_0126** | *Communications are primarily concerned with legal ability to reach agreement with company, what court would need to approve, and suggestions to contact legal staff for advice.* |
| **NuCO2_Priv_0282** | *Email chain includes direct request for contract interpretation/legal rights questions for in-house counsel and communication of legal counsel for the same issue.* |
| **NuCO2_Priv_0297** | *Includes direct request for legal counsel pertaining to contract formation and interpretation. Extent of the email chain pertains to legal issues* |
| **NuCO2_Priv_0332** | *Emails include direct solicitation and communication of legal advice pertaining to company's legal obligations and rights.* |
| **NuCO2_Priv_0390** | Email chain between NuCO2 employees clarifying overage system calculations. |
| **NuCO2_Priv_0425** | Email chain with customer's counsel and then between NuCO2 pertaining to settling issues with customer, strategy for resolving dispute. Unrelated issues including equipment purchase and contract renegotiation. |
| **NUCO2_PRIV_298** | Internal NuCO2 email communications regarding a customer account that was being acquired by another entity. |
| **NUCO2_PRIV_171940 (w/ 309)** | Emails between NuCO2 employees and a customer's employees relating to an alleged safety violation committed by NuCO2 employees. |
| **NUCO2_PRIV_818** | NuCO2 paralegal requested information to put a document retention hold on a customer file. The document hold is for litigation surrounding an unrelated issue. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_PRIV_1052** | Communications and documents relating to a dispute between NuCO2 and one of its customers; the issue originates out of an alleged breach of the requirements contract. |
| **NuCO2_PRIV_1055** | The same communication and documents in NuCO2_Priv_1052. |
| **NuCO2_PRIV_1078** | Emails included in NuCO2_Priv_171940 (w/309). |
| **NuCO2_172294** | Internal emails relating to a customer's request for assistance to deal with a regulatory compliance issue. |
| **NuCO2_Priv_37** | *Gathers docs about relationship with client for legal to respond to subpoena in unrelated matter.* |
| **NuCO2_Priv_303** | Records request from SSA relating to a customer. |
| **NuCO2_Priv_822** | Oregon DOJ Request re Schooner Lounge; relates to fire code complaint |
| **NuCO2_Priv_823** | Oregon DOJ Request re Schooner Lounge; relates to fire code complaint |
| **NuCO2_Priv_1205** | *Legal advice regarding irrelevant lawsuit with a customer.* |
| **NuCO2_Priv_1212** | *Dispute with customer regarding early termination penalty.* |
| **NuCO2_143727** | Praxair business document. |
| **NuCO2_143734** | Praxair business document. |
| **NuCO2_148989** | Praxair business document. |
| **NuCO2_172391** | Redacted portion of an application is personal information. |
| **NuCO2_Priv_932** | IT issue causing them to miss auto billing certain customers. |
| **NuCO2_Priv_934** | IT issue causing them to miss auto billing certain customers. |
| **NuCO2_Priv_968** | Relates to how to account for equipment under new accounting standards. |
| **NuCO2_Priv_180** | Correspondence re Oregon Fire Marshal. |
| **NuCO2_Priv_253** | Correspondence re GA Fire Marshal re CO2 tank location and installation. |
| **NuCO2_Priv_530** | Correspondence re pass/fail CO2 monitor inspections. |
| **NuCO2_Priv_615** | Discussing who is responsible for complying with City of Portland's requirements for installation of CO2 machines. |
| **NuCO2_Priv_647** | NJ Violations for failed CO2 tank remediations and operating CO2 machines without certification. |
| **NuCO2_Priv_1031** | Customer dispute because NuCO2 installed a tank without permit. |
| **NuCO2_Priv_1160** | Communications about preparing policies and rental agreements for CO2 equipment rentals. |
| **NuCO2_Priv_1161** | *Email to set up call to discuss business sales strategy and topics related to preparing agreements with clients.* |
| **NuCO2_Priv_1166** | Business and legal information regarding NuCO2's CO2 monitor rentals. |
| **NuCO2_Priv_1174** | Business and legal information regarding NuCO2's CO2 monitor rentals. |
| **NuCO2_Priv_1210** | Business information regarding a customer price match provision. |
| **NuCO2_Priv_1223** | Communications about whether NuCO2 or customers are responsible for obtaining permits/complying with local regulations. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| NuCO2_143866 | Slideshow on NuCO2 FLEET Operations. |
| NuCO2_164752 | *Management Team key initiatives in various categories such as safety, logistics, and field operations. The action/notes section for the follow categories are redacted: acquisitions, comp. update, and bulk CO2.* |
| NuCO2_172009 | *Communications regarding proposed changes in contract with customer.* |
| NuCO2_Priv_148 | Communications about possibly acquiring a different type of Co2 monitors. |
| NuCO2_Priv_1077 | *Internal emails about being contacted by a government body about customer. Requesting information/advice from legal counsel.* |
| NuCO2_Priv_1077.1 | *Email about requesting legal advice on responding to subpoena.* |
| NuCO2_Priv_1077.2 | Blank page. |
| NuCO2_Priv_1077.3 | Credit run form from customer. |
| NuCO2_Priv_1077.4 | *Internal emails gathering information to send to legal for government request.* |
| NuCO2_Priv_1077.6 | Blank page. |
| NuCO2_Priv_1077.7 | Standard product supply agreement. |
| NuCO2_Priv_1077.8 | Blank page. |
| NuCO2_Priv_1077.9 | Subpoena from IRS OIG commanding information from NuCO2. |
| NuCO2_Priv_1077.1 0 | Blank page. |
| NuCO2_Priv_1035 | Communications and customer information relating to settlements due to an allegation of property damage by a NuCO2 employee. |
| NuCO2_148678 | May 2016 NuCO2 Monthly Business Review slideshow, including financial information, growth opportunities, forecasts; etc. |
| NuCO2_154046 | Communications regarding compliance with gas detection system for inspection. |
| NuCO2_171984 to 172005 | Communications and documents regarding gas detection requirements in New Jersey. |
| NuCO2_171276 to 172199 | Communications and documents related to unrelated regulatory topics. |
| NuCO2_172047 | Communications regarding a customer's issue with CO2 monitor. The internal emails are redacted. |
| NuCO2_170723 | Contract data reports of a customer. |
| NuCO2_148698 | Email thread preparing discussion with McDonald's regarding price increases. |
| NuCO2_121190 | Business strategy presentation. |
| NuCO2_172900 | Communications about CO2 monitor function verification in New Jersey. |
| NuCO2_103962 | Business info re Linde and NUCO2. |
| NuCO2_104805 | Meeting agenda. |
| NuCO2_173901 | Slideshow about NuCO2's safety metrics. |

| BATES NUMBER | DESCRIPTION |
| --- | --- |
| **NuCO2_179100** | Slideshow about NuCO2's safety metrics. |

### ATTACHMENT B
#### RELEVANT SETTLEMENT DOCUMENTS / MUST PRODUCE

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NUCO2_Priv_13** | Internal communication between non-attorneys pertaining to Checkers account and price adjustment. |
| **NuCO2_Priv_13.1** | A form explaining how prices are calculated and the email indicates that it is one that gets shared. |
| **NuCO2_Priv_39** | Emails pertaining to contract negotiations that include references to fuel charges and energy surcharge. |
| **NuCO2_Priv_44.1** | Customer profile that includes fuel and energy surcharge data. |
| **NuCO2_Priv_122.3** | Letter from customer's attorney that includes mention of price increases. |
| **NuCO2_Priv_122.2** | Customer data that includes data on energy prices and price adjustment. |
| **NuCO2_Priv_122.4** | Customer data that includes data on energy prices and price adjustment. |
| **NuCO2_Priv_131** | Email chain with debt collector that includes mention of price increases. |
| **NuCO2_Priv_131.1** | Email chain that includes reference to price increases. |
| **NuCO2_Priv_138.1** | Letter from customer's attorney that includes references to price disparities. |
| **NuCO2_Priv_174.1** | Copies of customer contract, discussion of customer interaction, and complaint from customer about energy surcharges. |
| **NuCO2_Priv_177.1** | Letter from customer's attorney that includes references to price increases without proper notice. |
| **NuCO2_Priv_178.1** | Customer data that includes price adjustment and surcharge information. |
| **NuCO2_Priv_182** | Emails between customer and NuCO2 employees pertaining to a lawsuit or threat of a lawsuit regarding unpaid fees, includes mention of annual increase. |
| **NuCO2_Priv_182.2** | Customer data that includes price adjustment and energy prices. |
| **NuCO2_Priv_185.1** | Notice of price increase. |
| **NuCO2_Priv_185.2** | Notice of price increase. |
| **NuCO2_Priv_186.10** | Customer data that includes energy price and price adjustment information. |
| **NuCO2_Priv_194.1** | Letter from customer protesting price increases. |
| **NuCO2_Priv_205.1** | Customer invoices that include energy surcharge information. |
| **NuCO2_Priv_205.2** | Letter from customer's attorney alleging price increases without proper notice. |
| **NuCO2_Priv_223.11** | Customer invoices that include energy surcharge data. |
| **NuCO2_Priv_238.6** | Customer invoices that include energy surcharge data. |
| **NuCO2_Priv_238.7** | Customer invoices that include energy surcharge data. |
| **NuCO2_Priv_238.8** | Customer store data with surcharge data. |
| **NuCO2_Priv_242.2** | Customer profile in XLS format but with mention of "Engy Price" and price adjustments. |
| **NuCO2_Priv_261.1** | Customer data including "Engy Price" and price adjustments. |
| **NuCO2_Priv_343.1** | Customer data that includes price adjustment information. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_431.1** | Raw customer data including price adjustment and energy prices. |
| **NuCO2_Priv_444** | Email including status of open escalation for contract terms. |
| **NuCO2_Priv_444.1** | Customer profile data, including fuel and energy surcharges and OE status. |
| **NuCO2_Priv_444.2** | Customer letter and emails that include references to price discrepancies and energy surcharge. |
| **NuCO2_Priv_457.1** | Customer data that includes energy prices, fuel prices, price adjustment. |
| **NuCO2_Priv_457.3** | Customer data that includes price adjustment and energy prices. |
| **NuCO2_Priv_474.3** | Customer data that includes price adjustment data and energy price. |
| **NuCO2_Priv_481.3** | Customer data that includes fuel and energy surcharges. |
| **NuCO2_Priv_564.2** | Customer records that includes information on price adjustment and spaces for energy and fuel prices. |
| **NuCO2_Priv_577** | Emails that include references to fuel surcharge offer, energy surcharge offer. |
| **NuCO2_Priv_943.1** | Customer invoices that include energy surcharge totals by the month. |
| **NuCO2_Priv_943.2** | Customer invoices that include energy surcharge totals by the month. |
| **NuCO2_Priv_944.1** | Customer records that include numbers for energy surcharges. |
| **NuCO2_Priv_944.2** | Customer records that include numbers for energy surcharges. |
| **NuCO2_Priv_944.3** | Customer records that include numbers for energy surcharges. |
| **NuCO2_Priv_949.2** | Customer invoices that include fuel and energy surcharges. |
| **NuCO2_Priv_949.5** | Customer invoices that include fuel and energy surcharges. |
| **NuCO2_Priv_951.1** | Customer invoices that include energy surcharges. |
| **NuCO2_Priv_1057.3** | Customer data that includes price adjustment and surcharge cap information. |
| **NuCO2_Priv_1057.4** | Myriad of documents that include several references to fuel and other surcharges and calculations. |
| **NuCO2_Priv_1084** | Email chain that includes references to open escalation, price increase dispute, and energy costs. |
| **NuCO2_Priv_1181** | Email chain with information for open escalation category. |
| **NuCO2_Priv_1181.3** | Email that includes reference to energy surcharge. |
| **NuCO2_Priv_1188.2** | Customer information that includes energy and fuel prices and indication of price adjustment. |
| **NuCO2_Priv_1193** | Email chain that includes references to price increases and energy fees. |
| **NuCO2_Priv_1193.3** | Customer data that includes energy prices and price adjustment. |
| **NuCO2_Priv_1215.8** | Customer data that includes energy prices and price adjustment. |
| **NuCO2_166177** | Customer data that includes fuel prices and open escalation status. |
| **NuCO2_Priv_0001** | Email chain that includes reference of surcharges by customer's attorney. |
| **NuCO2_Priv_0033** | Emails that include reference to customer's unwillingness to pay annual increase. |
| **NuCO2_Priv_0157** | Email chain that includes information about fuel charges. |
| **NuCO2_Priv_0175** | Email documenting history with customer that includes mention of customer's displeasure with price increases he says were made without proper notice. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_ Priv_0366** | Emails pertaining to customer dispute that includes mention of annual price (inflation) adjustment. |
| **NuCO2_Priv_0374** | Email chain that includes references to topic of annual price adjustments and customer explaining he just learned of one. |
| **NuCO2_Priv_0427** | Email chain pertaining to settling dispute with customer that includes price increases and energy costs. |
| **NuCO2_Priv_476** | Emails pertaining to dispute with customer that includes notification of price increases and open escalation issues. |
| **NuCO2_Priv_0927** | Email chain that includes reference to customer's displeasure with price increases and alleged lack of notification. |
| **NuCO2_Priv_0930** | Email chain between debt collector sending along customer's offer to settle, includes price increase reference as to why customer cancelled. |
| **NuCO2_Priv_0956** | Email chain that references customer's displeasure with price increases. |
| **NuCO2_Priv_1082** | Email chain that includes references to energy price and reference to price increase. |
| **NuCO2_Priv_1094** | Email chain that includes customer's attorney and NuCO2 employees pertaining to customer's complaint about unnotified price increases. |
| **NuCO2_Priv_1218** | Email chain between customer's counsel and NuCO2 employees including references to surcharges and price increase terms. |
| **NuCO2_Priv_1219** | Email chain that mentions surcharges and price increases in customer attorney's terms. |
| **NuCO2_Priv_1222** | Email chain that includes mentions of surcharges and price increases in attorney's terms. |
| **NuCO2_Priv_1077.5** | Customer data that includes price adjustment information. |
| **NuCO2_Priv_95.3** | Includes surcharge data. |
| **NuCO2_Priv_4.3** | Mentions fuel prices/price adjustment. |

ATTACHMENT C
RELEVANT/ PROTECTED BY ATTORNEY-CLIENT PRIVILEGE/ DO NOT PRODUCE

| BATES NUMBER | DESCRIPTION |
|---|---|
| NuCO2_Priv_0173 | Email thread between business employees focused on the collection of, and requests for, information at the request of in-house counsel. The communication would not have occurred but for the contemplation of legal advice, and the communications primary purpose was to provide information to in-house counsel. |
| NuCO2_Priv_0219 | In-house counsel gave business employee presentations created by the legal department for the purpose of giving legal advice. |
| NuCO2_Priv_654 | Requests for employee feedback on in-house counsel's revisions to standard form contracts. The communications' primary purpose was to provide information to aid in the provision of legal advice. |
| NuCO2_Priv_670 | Additional communications related to NuCO2_Priv_654. |
| NuCO2_Priv_673 | Additional communications related to NuCO2_Priv_654 and NuCO2_Priv_670. |
| NuCO2_Priv_754 | Business employees gathered ideas in contemplation of in-house counsel's revisions of the form contracts. The primary purpose was to provide in-house counsel with information in anticipation of legal advice. |
| NuCO2_Priv_0999 | Email thread between business employees and in-house counsel discussing contract negotiations with a customer. The communications would not have occurred but for the contemplation of legal advice. The purpose is to receive legal advice on specific provisions. |
| NuCO2_Priv_1019 | Exchange between in-house counsel and business employee. The business employee requested legal advice from in-house counsel on contract revisions. |
| NuCO2_Priv_1035 | In-house counsel requested documents pertaining to a customer's account. The purpose of the request was for the delivery of legal advice. |
| NuCO2_Priv_1103 | Email exchange between in-house counsel and business employees concerning contract negotiations with a prospective customer. The purpose was to receive legal advice from in-house counsel. |
| NuCO2_Priv_1155 | Email thread involving in-house counsel, legal staff, and business employees. The purpose of the exchange was to receive legal advice from in-house counsel on a proposed contract. |
| NuCO2_Priv_1157 | Same thread as NuCO2_Priv_1155. |
| NuCO2_Priv_1197 | In-house counsel and business employee exchanged emails regarding in-house counsel's legal advice on the draft of a contract. |
| NuCO2_Priv_1203 | A business employee shared the legal advice of in-house counsel with another business employee. |
| NuCO2_Priv_1207 | In-house counsel and business employee exchanged emails regarding revisions to a general form contract. The primary purpose was the solicitation of legal counsel's advice on the issue. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| NuCO2_Priv_1209 | Email thread involving a request for legal advice relating to form contracts, and the delivery of legal advice from in-house counsel. |
| NuCO2_104193 | Business employee directed another employee to speak with in-house counsel for legal advice on a specific matter. |
| NuCO2_104807 | The redacted section contains legal advice from in-house counsel that is being shared from on business employee to another for the purpose of transmitting the legal advice. |
| NuCO2_121375 | Email exchange between in-house counsel and business employees regarding allegations made by a customer. The communications are overwhelmingly related to legal advice. |
| NuCO2_135183 | Business employee requested legal advice from in-house counsel on an issue relating to debt collections. |
| NuCO2_135459 | Business employees share among each other the legal advice from in-house counsel. The primary purpose of the communication is to disseminate in-house counsel's legal advice. |
| NuCO2_158497 | The redacted portion contains the legal advice of in-house counsel. The primary purpose of the communication was to share in-house counsel's legal advice. |
| NuCO2_160612 | Redacted portion contains a request for legal advice from in-house counsel; the primary purpose of the communication was to seek legal services from counsel. |
| NuCO2_160795 | Redacted section contains the legal advice of in-house counsel; the primary purpose of the section is to convey the advice of in-house counsel to another business employee. |
| NuCO2_170024 | The redacted communication would not have occurred but for the contemplation of legal services. The communication's primary purpose was a request for legal services. |
| NuCO2_170580 | Communication's primary purpose was to transmit the legal advice and work product of legal counsel to another business employee involved in that project. |
| NuCO2_170719 | The communication would not have occurred but for the contemplation of legal services. Business employees discussed the involvement of, and the need for advice from, legal counsel on a proposed strategy. |
| NuCO2_170748 | Legal staff and business employees discussed contract revisions for a large customer. The purpose of the communications was to request legal advice from in-house and the delivery of the requested advice. |
| NuCO2_170837 | The communications share the results of legal advice given by in-house counsel. |
| NuCO2_171076 | Email from business employee to in-house counsel discussing the latter's participation in a customer agreement. The communication's primary purpose was to discuss in-house counsel's legal advice. |
| NuCO2_171176 | Email between business employees. The primary purpose of the relevant section is to request and discuss the provision of legal services. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_171294** | Business employees exchange emails involving a discussion of in-house counsel's legal advice and participation in the drafting process. |
| **NuCO2_171317** | Email thread between various senior level business employees; the primary purpose of the communication being the request for, and receipt of, legal services from in-house counsel. |
| **NuCO2_171507** | Business employees discussed requesting legal services from in-house counsel relating to the modification of existing franchise agreements. |
| **NuCO2_171639** | Communication's primary purpose is a request for legal services on a specific contractual matter during negotiations. |
| **NuCO2_171641** | Business employees and legal staff discussed modifications to a standard form contract; the communications contain the legal advice of in-house counsel and are entirely legal in nature. |
| **NuCO2_171660** | Business employees exchange emails discussing legal advice from in-house counsel relating to agreement renewals. |
| **NuCO2_171904** | The communication's purpose is a request for legal services from in-house counsel. |
| **NuCO2_172009** | Business employees and in-house counsel exchanged communications for the purpose of receiving and giving legal advice. all communications contain the delivery of legal advice from in-house counsel. |
| **NuCO2_172068** | Business employees requested legal services from in-house counsel relating to contract negotiations with a government customer. |
| **NuCO2_172085** | The communications contain in-house counsel's legal advice or business employee discussing said advice. |
| **NuCO2_172230** | The communications contain a request for legal services and discuss the legal advice given by counsel. |
| **NuCO2_172404** | The communication discussed legal advice given by in-house counsel on a draft contract for a customer. |
| **NuCO2_172417** | Business employees discuss and share legal advice from in-house counsel on a collections issue. |
| **NuCO2_172513** | In-house counsel communicated with a senior business employee, informing him of correspondence that was received by in-house counsel. |
| **NuC02_172643** | Business employee requested legal services from in-house counsel. |
| **NuC02_172712** | Busines employees discuss the contract renewal process for several customer accounts; the primary purpose of the communication is to transmit legal advice provided by in-house counsel. |
| **NuC02_173005** | Email thread discussing the input and legal advice given by in-house counsel. |
| **NuCO2_Priv_17** | Business employee gathers feedback in contemplation of legal services from in-house counsel. The primary purpose is to discuss the legal service provided by in-house counsel and how to proceed with future requests. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuC02_Priv_67** | Email thread involving in-house counsel and business employees. the communication contains requests for, and the delivery of, legal advice from in-house counsel. |
| **NuC02_Priv_75** | Business employee discuss advice given by in-house counsel and then contemplate further requests for in-house counsel to provide legal advice on. |
| **NuC02_Priv_379** | The communications discuss document production necessary for in-house counsel to provide legal advice. The primary purpose of the communications is to facilitate legal services from in-house counsel. |
| **NuC02_Priv_539** | Exact same document as NuCO2_Priv_0754. |
| **NuC02_Priv_565Y** | Business employee and legal staff discuss potential edits to form agreements. The primary purpose of the communications are the provision and receipt of legal advice from in-house counsel. |
| **NuC02_Priv_572** | Same email as NuC02_Priv_0754 and NuC02_Priv_539. |
| **NuC02_Priv_627** | Business employees and in-house counsel exchanged emails regarding information requested by in-house legal counsel. |
| **NuC02_Priv_751** | Different employee response from the same email in NuC02_Priv_0754. |
| **NuC02_Priv_752** | Different employee response from the same email in NuC02_Priv_0754. |
| **NuC02_Priv_790** | Legal staff notified business employees of a document hold request due to legal issue. Business employee shared the information with necessary employees to provide guidance on compliance. |
| **NuCO2_Priv_65.1** | Email chain includes legal counsel and made for the primary purpose of conveying and receiving legal advice. |
| **NuCO2_150942** | Emails between NuCO2 staff include in-house counsel requesting information so as to handle ongoing legal dispute |
| **NuCO2_171225** | Primary purpose of communication is seeking in-house counsel advice on contractual language and requirements. Also includes indication of what in-house counsel has advised. |
| **NuCO2_Priv_859** | Request from attorney for information on certain purchases by NuCO2 in light impending merger. |
| **NuCO2_Priv_860** | Request from attorney for information on certain purchases by NuCO2 in light impending merger (same as 859). |
| **NuCO2_Priv_0201** | Communications regarding settling a potential claim with a customer. |
| **NuCO2_Priv_1020** | Legal Dept telling client about complaint relating to customer |
| **NuCO2_171476** | Communications regarding how to respond to/negotiate proposed terms of Master Services Agreement with client. Internal emails are redacted. |
| **NuCO2_Priv_69** | The request for advice was in contemplation of legal services from in-house counsel. The purpose of the communication was to provide in-house counsel with the desires of the business employees so that in-house counsel could alter the contract. The communications were limited to company employees. |

4

| BATES NUMBER | DESCRIPTION |
| --- | --- |
| **NuCO2_Priv_74** | The email thread is almost the exact same as NuCO2_Priv_69. The same analysis applies. |
| **NuCO2_Priv_75** | Same email thread as the NuCO2_Priv_74 and NuCO2_Priv_75. The only difference is the employee who offers his feedback. The privilege analysis is identical. |

5

<u>**ATTACHMENT D**</u>
**RELEVANT/NO ATTORNEY-CLIENT PRIVILEGE/ MUST BE PRODUCED**

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_851** | Communications were not made in contemplation of legal advice or services. They were made to transmit internal sales materials. Although in-house counsel was involved in the email thread, counsel's participation did not relate to the provision of legal services. |
| **NuCO2_Priv_1182** | In-house counsel sent a business employee factual information not related to legal advice or legal services. The communications appears to be a standard business communication absent any legal advice. The attachments are factual information absent any connection that would support privilege. |
| **NuCO2_114809** | The redacted section contains a business employee's opinion on a legal concept, but it does not contain any legal advice from in-house counsel. The primary purpose of the communication is business related. |
| **NuCO2_152284** | The primary purpose of the communication was to secure permission to include new terms in a customer's renewal agreement. The approval sought was for business, not legal advice. There is a mention of counsel changing the contract, but within the context it is not a request or relation of legal advice. Rather, it is simply a statement incorporated within the approval of the terms. |
| **NuCO2_171900** | The email is between business employees without any in-house legal counsel involved. No legal advice from counsel is transmitted, requested, or relayed. The defendant has failed to meet its burden. |
| **NuCO2_172606** | The primary purpose of the communication is to encourage an employee to participate in a business proposal. The redacted portion is a mention that in-house counsel reviewed the new agreement, but there is no agreement attached and no legal advice from counsel included. |
| **NuCO2_Priv_1122** | The communication was not made for the purpose of requesting legal advice. It was made for the purpose of requesting business documents. In-house counsel is not involved in the communication in any capacity. Moreover, the attachment is purely factual information that contains no legal advice. |
| **NuCO2_107823** | The communication was not made in contemplation of legal services. The redacted portion mentions the costs of legal services, but the purpose of the communication itself was business related. In-house counsel provided no legal advice or input on the communication. |
| **NuCO2_143305** | The redacted email does not involve the advice or legal services of in-house counsel. The email mentions a form agreement developed by the legal department, but the primary purpose of the communication is business related. |

| Bates Number | Description |
|---|---|
| **NuCO2_167313** | The primary purpose of the communication was to respond to the business comments regarding an agreement with a customer. |
| **NuCO2_Priv_83** | This document is a customer file without any communication attached that would support a finding of attorney-client privilege. Absent any indication that the contract contains communications or legal advice from in-house counsel, there is no basis for privilege. |
| **NuCO2_168211** | The document is absent anything related to legal advice from in-house counsel. Its purpose is overwhelmingly business related |
| **NuCO2_171640** | Factual information unconnected to any communication. Neither made in contemplation of legal services nor for the primary purpose of relaying, transmitting, or requesting legal advice. |
| **NuCO2_109** | Communication is duplicative of NuCO2_Priv_851 and does not warrant attorney-client privilege for the same reason. |
| **NuCO2_Priv_142_ Draft Redactions** | The proposed redacted sections are within factual information not communications. Furthermore, these sections might mention in-house counsel, but their disclosure will not result in the disclosure of confidential attorney-client communications. |
| **NuCO2_Priv_346_ Draft Redactions** | The proposed redacted sections are within factual information not communications. Furthermore, these sections might mention in-house counsel, but their disclosure will not result in the disclosure of confidential attorney-client communications. |
| **NuCO2_Priv_984_ Draft Redactions** | The proposed redacted sections are within factual information not communications. Furthermore, these sections might mention in-house counsel, but their disclosure will not result in the disclosure of confidential attorney-client communications. |
| **NuCO2_Priv_997.4 Draft Redactions** | The proposed redacted sections are within factual information not communications. Furthermore, these sections might mention in-house counsel, but their disclosure will not result in the disclosure of confidential attorney-client communications. |
| **NuCO2_Priv_741** | The communication does not involve any legal staff and the business employees are not transmitting legal advice from in-house counsel. The purpose of the communication is to transmit edits suggested by business employees to a finalized version of a standardized form contract. The attachments contain factual information that does not reveal attorney-client communications or legal advice from counsel. |
| **NuCO2_Priv_1124** | The communication and attachments are identical to NuCO2_Priv_741 and must be disclosed for the same reasons. |
| **NuCO2_Priv_875** | Business information communicating NuCO2 profits for March 2018. |
| **NuCO2_Priv _ 99** | This is the same email thread as _851 and _109. The same analysis applies. |
| **NuCO2_Priv_512** | The communication is between two business employees for the purpose of discussing business. Not related to legal advice from in-house counsel. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| NuCO2_Priv_522 | The communications are between business employees without in-house counsel involved in any fashion. There is no legal advice mentioned, requested, or discussed. This communication and its attachments are purely business. |
| NuCO2_Priv_709 | The communication was from one business employee to another for informational purposes. It was intended to inform the VP of the status of the customer's account. There was no legal advice discussed, and the communication was not made in contemplation of legal services. |
| NuCO2_Priv_1089 | The attachments are emails between NuCO2 and the customer regarding the invoice dispute. There is no legal staff included on the emails, nor are they sent to legal staff. The only thing legal about the communications is that the customer threatens to sue at one point and NuCO2 does the same. |
| NuCO2_120694 | NuCO2 2016 business plan review. All has been produced except for one line. NuCO2 has not met burden as to why that one line is redacted. |
| NuCO2_149022 | August 2018 NuCO2 packet re business financials.  Most of the document has been turned over except for one line. NuCO2 has not met its burden as to why that one line is redacted. |
| NuCO2_170481 | Summary regarding costs including fuel.  Most of document has been produced except for a small section NuCO2 has not met burden as to why one line is redacted. NuCO2 has not met its burden as to why that small section is redacted. |
| NuCO2_170486 | Meeting notes regarding profit, loss and other business matters. The entire document has been produced except for one line. NuCO2 has not met its burden as to why that one line is redacted. |
| NuCO2_170493 | Meeting notes regarding 2018 performance. The entire document has been produced except for one line. NuCO2 has not met its burden as to why that one line is redacted. |
| NuCO2_Priv_1017 _Draft Redactions | Charts involving financials for past ten years and asset depreciation. The entire document has been produced except for one line. NuCO2 has not met its burden as to why that one line is redacted. |
| NuCO2_Priv_1002 | Business information mentions delivery fees and "out of gas" related content. NuCO2 has not met its burden as to why this this family is privileged. |
| NuCO2_173909 | 2016 NuCO2 Business Review Package containing financial information for NuCO2. Most of this document has been produced except for two lines.  NuCO2 has not met its burden as to why those two lines are redacted. |
| NuCO2_173928 | 2017 NuCO2 Business Review Package containing financial information for NuCO2. Most of this document has been produced except for one line.  NuCO2 has not met its burden as to why that one line is redacted. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_7_Draft Redactions** | NuCO2 2019 Preliminary plan with fiscal year 2018 forecast and fiscal year 2019 plan. NuCO2 indicated that it plans to produce nearly the entire document except for a few columns. NuCO2 has not met its burden as to why those columns should be redacted. |
| **NuCO2_Priv_231_ draft redactions** | NuCO2 financial information. NuCO2 indicated that it plans to produce nearly the entire document except for one line. NuCO2 has not met its burden as to why that one line should be redacted. |
| **NuCO2_122311** | Chart of various client accounts, and their details. Most has been produced except for one redacted line. NuCO2 has not met its burden as to why that one line is redacted. |
| **NuCO2_179090** | 2017 NuCO2 Business Review Package presentation. Most of the document has been produced except for one redacted line. NuCO2 has not met its burden as to why that one line is redacted. |
| **NuCO2_103941** | NuCO2's Risks and Opportunity list. Most of document has been produced except for one line. NuCO2 has not met burden as to why one line is redacted. NuCO2 has not met its burden as to why that small section is redacted. |
| **NuCO2_178849** | Internal business review presentation for corporate meeting purposes. Outline corporate strategy and weaknesses.  Factual information completely unattached to any communication. The redacted information is unrelated to any legal advice or legal services. There is no discernable reason why it should be considered attorney-client privileged. |

<u>ATTACHMENT E</u>
ATTORNEY-CLIENT PRIVILEGED IN PART/ PRODUCE AS INSTRUCTED

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_1070** | Business employee requested documents on behalf of legal staff. The attachments (1070.1 and 1070.2) contain factual information that does not reveal the contents of the attorney-client communication and was not created for the purpose of providing legal advice; therefore, they must be turned over. |
| **NuCO2_Priv_1171** | Business employee requested legal advice from in-house counsel relating to a customer's contract. The communication is privileged in part, but the emails from outside counsel sent on 04/03/2016 at 12:00pm are non-confidential and must be produced. The attachment is merely factual information that does not risk revealing any confidential customer information. Therefore, it must be disclosed. |
| **NuCO2_119643** | The first redaction, the 12:13pm email from David Reyes to Peter Craig on 03/03/2017, was made in contemplation of legal services and contains a request for legal service from in-house counsel. The second redaction was not made in contemplation of legal services and does not contain any legal advice; therefore, it must be disclosed. |
| **NuC02_Priv_0609** | Email thread relating to contract negotiations with a customer. The privileged emails contain either the direct advice from in-house counsel on a legal matter, or the transmission of legal advice from one business employee to another. The emails on the second page of the PDF, beginning with the email form Annette Jennings to Peter Craig on 5/24/2016 are not privileged because they are not confidential communications between NuCO2 employees. |
| **NuCO2_Priv_122** | Employee contacting in-house counsel specifically for legal advice about responding to a letter from a customer's attorney. The attachments to NuCO2_Priv_122 are not privileged because they do not contain any factual information that would reveal the contents of attorney-client communications and they are not original productions. |
| **NuCO2_Priv_176** | Employees gathering information for legal mentioning previous conversation with legal counsel pertaining to legal issue. The attachment, 0176.1, contains underlying factual information that does not reveal the contents of the attorney client communication. The attachment must be disclosed but the email thread itself is privileged. |
| **NuCO2_Priv_177** | Email chain that includes legal counsel and communications made in contemplation of legal services from in-house counsel. The discussion between business employees were for the purpose of gathering information in preparation for legal advice. The customer files and letter from outside counsel attached to the email thread do not warrant the application of attorney-client privilege. The customer file information in 0177.2 is underlying factual information that does not reveal the contents of privileged communications; therefore it must be disclosed. |

1

| Bates Number | Description |
|---|---|
| **NuCO2_Priv_178** | Internal emails between employees gathering information to provide to legal counsel for purpose of a legal dispute with customer. The email communications include those in NuCO2_Priv_178. The attachment, NuCO2_Priv_0178.1 contains factual information that does not reveal the contents of privileged communications and was not created as a result of legal advice or services; therefore, it must be disclosed. |
| **NuCO2_Priv_185** | Email chain including legal counsel made primarily for purpose of evaluating legal position and contractual issues. The attachments, NuCO2_Priv_0185.1 and NuCO2_Priv_0185.2 are notices sent by NuCO2 and neither contain, nor risk disclosing, any privileged information; they must be disclosed. |
| **NuCO2_Priv_194** | Employees directing questions and gathering information for the purpose of responding to a legal issue presented by a customer's attorney. Includes in-house counsel in legal capacity. All emails are privileged with the exception of the following: 6/09/2017 at 9:53 am from Matt Butcher to John Templin and Maria Primm; and 6/09/2017 at 10:23am from John Templin to Maria Primm. These emails do not contain legal advice from in-house counsel and are communications from business employees for business purposes. Furthermore, the attachments 0194.1 and 0194.2 are not privileged and must be disclosed. |
| **NuCO2_Priv_205** | Employees seek advice and collect information from legal counsel pertaining to ongoing threat of litigation. The following emails are not confidential to NuCO2 employees and must be disclosed: 04/04/2017 at 6:49 pm between Maria Primm and Erin Olshever; and 03/31/2017 between Erin Olshever and Maria Primm. The attachments contain factual information and non-privileged communications that must be disclosed. |
| **NuCO2_Priv_1102** | The email communication is not privileged as it is between two business employees who are discussing business matters, not legal advice from in-house counsel; therefore, it must be disclosed. The attachment, 1102.1, contains communications between an employee and in-house counsel for pertaining to legal/contractual validity concerns. The attachment is privileged. |
| **NuCO2_Priv_50** | Email chain includes communications to in-house counsel requesting legal advice/service to determine company's rights and obligations under the existing contract. Only the following emails are privileged because they contain legal advice from in-house counsel: 06/25/18 at 11:13am from David Markatos to Maria Primm; and 06/22/2018 at 12:29 pm from Maria Primm to David Markatos. |
| **NuCO2_Priv_0193** | Email chain in NuCO2_Priv_0194. The following emails must be disclosed as they were not made in contemplation of legal services and do not contain legal advice from in-house counsel: 06/09/2017 at 10:23am from John Templin to Maria Primm; 06/09/2017 at 10:53am from Matt Bucher to John Templin and Maria Primm; 06/09/2017 at |

| Bates Number | Description |
|---|---|
|  | 11:33am from John Templin to Matt Butcher; and 06/09/2017 at 12:22pm from Matt Butcher to John Templin. All attachments must be produced for the same reasons as 0194 |
| NuCO2_Priv_0212 | Emails contain both solicitation for contractual information and advice from in-house counsel and in-house counsel's directions on specific contractual language and provisions. However, some of the email communications are between business employees for business purpose and do not mention or transmit legal advice from in-house counsel. They are not privileged and must be disclosed; these emails begin with the message from Michael Graham to Brian Potter on 12/20/2018 at 4:42pm and end with the email from John Templin to Brian D. Potter on 12/20/2018 at 5:54pm. |
| NuCO2_Priv_0237 | Email chain includes solicitation of legal counsel for purposes of contract issue and requesting in-house counsel's additional help in speaking with customer's attorney. The email between NuCO2 employees and the customer's attorney are non-confidential and are not protected by attorney-client privilege. All emails forwarded by David Markatos on 6/20/107 at 3:02pm must be disclosed. |
| NuCO2_Priv_1096 | Email chain includes communication of information to legal counsel for purposes of legal advice as well as explanation of legal counsel's position on benefit of amicable resolution versus litigation route. This communication is duplicative of 0194 and 0193. |
| NuCO2_Priv_509 | The communications between NuCO2 employees and in-house counsel are privileged because they were made in contemplation of legal advice and contain requests for, or the delivery of, legal advice from in-house counsel. The forwarded email from the customer's outside counsel, sent by Jessica Hite to Sondra Meyer at 4:46pm on 03/04/16, is not privileged. Furthermore, the attachments are non-confidential communications and factual information that does not reveal any information. They must be disclosed as well. |
| NuCO2_Priv_531 | The email thread contains communications made by business employees in contemplation of legal services. The primary purpose of the communication is the provision of legal advice from in-house counsel. The attached documents are customer files and non-confidential communications that do not jeopardize the disclosure of non-confidential information. The attachments must be produced. |
| NuCO2_Priv_791 | The communication was sent in contemplation of legal advice. The purpose of the communication was to assist in-house legal counsel with the provision of legal advice. There are privileged communications contained within the attachment NuCO2_Priv_791.1. The privileged communications begin on page 14 of the PDF with the email from David Markatos to John Templin at 9:09am on 11/21/2017 and end on page 16 with the email sent to Peter Craig to John Templin & David Markatos at 10:56am on 11/15/2017. |
|  |  |

| BATES NUMBER | DESCRIPTION |
|---|---|
|  |  |
| **NuCO2_Priv_1075** | Business employee sent legal staff communications regarding customer files requested for litigation. The attached customer file is not privileged as it is factual information that does not reveal the contents of any privileged communications. |
| **NuCO2_Priv_1076** | Because they are the same communication, the same analysis as NuCO2_Priv_1075 applies. |
| **NuCO2_Priv_1099** | Privileged in part, but there are non-privileged communications included—emails from customer's counsel. The NuCO2 emails, which begin with Maria Primm's email to David Markatos on 4/05/17 at 2:59pm, are privileged. The attachments are not privileged because they were sent to a business employee to apprise him of the situation, not for the purpose of providing in-house counsel with materials to provide legal advice. |
| **NuCO2_Priv_1100** | The communications and attachments were sent in contemplation of legal services: they were sent for the purpose of providing in-house counsel with the information he requested. The communications were confidential to NuCO2 employees. Attachments 1100.4 and 1100.5 are customer information that does not reveal privileged communications, therefore, they must be disclosed. |
| **NuCO2_Priv_1211** | The communications are between in-house counsel and business employees regarding information necessary for legal counsel to provide legal advice. The attachments are customer files and non-privileged communications. The attachments are not protected because they are factual information that do not reveal the contents of privileged communications; therefore, they must be disclosed. |
| **NuCO2_Priv_0525** | While there are privileged communications within this email thread, not all of the emails share a primary legal purpose. Those emails that are primarily business related, and do not contain legal advice from counsel, are not protected by attorney-client privilege. The following emails must be disclosed: 3/23/2016 email from Russel Vicari to Eric Monroe sent at 2:28pm, 3/23/2016 email from Damarie Cortez to Russell Vicari, 3/31/2016 email from Damarie Cortez to Russel Vicari, 3/31/2016 email from Russell Vicari to Eric Monroe, 4/08/2016 email from Eric Monroe to Russel Vicari, 4/13/2016 email from Eric Monroe to Russell Vicari, 4/13/16 email from Russell Vicari to Eric Monroe, and 4/13/2016 email from Vice Giordano to John Templin. These emails do not involve legal advice; any advice is related to business strategies relating to a credit issue. |
| **NuCO2_Priv_0792** | With the exception of an email sent by John Templin at 9:25am on 9/25/2018, most of these communications were not made in contemplation of legal services. The rest of the emails were made to coordinate NuCO2's response to a dispute with a competitor from a business perspective, not a legal one. |

| BATES NUMBER | DESCRIPTION |
|---|---|
| **NuCO2_Priv_1003** | While there is a privileged communication and attachment within this email family, most of the communications are not regarding a primary legal purpose. The email sent by Heather Shepherd at 10:39am on 11/21/2018 in NuCO2_Priv_1003, and NuCO2_Priv_1003.1, which appears to reflect changes made by legal counsel are protected. The rest of the family must be disclosed. |